IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 03 CR 1092 |
| v. | ) | |
| | ) | Judge Ruben Castillo |
| DANIEL VON LOH | ) | |

NOTICE OF FILING AND CERTIFICATE OF SERVICE

To:    Mr. Chris Hotaling
       Assistant United States Attorney
       219 S. Dearborn Street
       Chicago, IL 60604

Please take notice that on this 21st day of May, 2004, the undersigned filed the following document(s) in the above captioned cause, a copy of which is attached hereto:

—    DEFENDANT SENTENCING MEMORANDUM AND OBJECTION TO THE PSR

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: _____
       Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8347

| | |
|---|---|
| STATE OF ILLINOIS | ) |
| | ) SS: |
| COUNTY OF COOK | ) |

I, _____, state that on the 21st day of May, 2004, I caused copies of the foregoing motion to be hand delivered to the U.S. Attorney's Office at 219 S. Dearborn Street, Chicago, Illinois.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA    )
                                 )     No. 03 CR 1092
          v.               )
                                 )     Judge Ruben Castillo
DANIEL VON LOH             )

## DEFENDANT VON LOH'S SENTENCING MEMORANDUM
## AND OBJECTION TO THE PSR

Defendant DANIEL VON LOH, by the Federal Defender Program and its attorney

DANIEL J. HESLER, respectfully submits the following objection to the PSR.

Defendant objects to assigning different consensual sexual acts occurring during the

course of a single ongoing relationship to different groups thereby increasing Mr. Von

Loh's guideline range via the multiple count rules. It is Mr. Von Loh's position that

different sexual episodes during a single consensual relationship should group. In support

of this motion the defendant states as follows:

**I.**    **Factual Background**

During the late summer and fall of 2003, Daniel Von Loh had an ongoing

relationship involving communication, love, and sex. Unfortunately for everyone

concerned, his paramour was 14 years old.

Sometime around April or May 2003, Daniel Von Loh met a girl in a chat room.

He said he was 24, although he was really 43. She said she was 18, although she was

really 13. He lived in Madison, Wisconsin, while she lived in a Chicago suburb. They

communicated at first exclusively by internet, and then by phone. Around July, prior to



their first real meeting, she admitted to him that she was 13. (She turned 14 in the fall.) He admitted to her that he was 31. Like a sixth grader getting his friend to talk to a girl for him, Mr. Von Loh also talked to the victim in an alternate screen name to find out what she thought of him.

Around late August, they met in person. They went to a hotel and had sex, in various forms. This occurred again later in the fall. Over the course of their continuing relationship, both parties expressed their love for each other. Finally, they met again around November 14, 2003. On the evening of November 15, the girl's parents called the police when they discovered she was not where they thought she was. They had good reason to worry; she and Mr. Von Loh had spent a decidedly adult weekend together. Mr. Von Loh drove her to a spot near her house and dropped her off. When she was confronted by the police who wanted to know where she had been, she confessed the relationship. Mr. Von Loh was arrested after he returned to Madison. He gave a complete confession upon his arrest.

Mr. Von Loh has a prior history of sex-related offenses, although none of his prior convictions indicate any predilection for underage women. In 1987, Mr. Von Loh received three convictions for Unlawful Use of a Telephone for calling up adult women and trying to persuade them to engage in sexual conversation and/or acts by pretending that he was conducting sex surveys or delivering sexual prizes. In a similar vein, Mr. Von Loh was convicted in 1988 of criminal trespass to dwelling for knocking on doors and

2

pretending to be a underwear model for Dr. Ruth Westheimer or a lingerie store. Mr. Von Loh seems to have successfully completed five years of supervision from these prior cases.

There is an additional unconvicted offense in Mr. Von Loh's record which requires discussion. See PSR at 11. It is discussed here because it is the only traditional "violence" attributed to Mr. Von Loh, and it is important to Mr. Von Loh that the Court understand this arrest. One of the victims of his phone sex calls alleged a year later that he called again, came over, and violently anally raped her. Two successive juries failed to convict Mr. Von Loh, despite their being told of his prior convictions. The charges were then dismissed. The casefile[1] reveals that the victim made massive material changes in her story (the rape portion of the offense was not mentioned by the victim until five months after the offense, which was originally reported as simply a home invasion), the victim had a history of prior sexual abuse, psychiatric problems, and a prior anal rape complaint determined "unfounded," Mr. Von Loh had an alibi (asleep in his bedroom in his parents' house), the victim may have had an abusive husband, and no physical evidence tied Mr. Von Loh to the offense. The victim also reported that Mr. Von Loh attacked her a second time (five months later) under even more dubious circumstances (i.e., he supposedly attacked her outdoors in October when she was wearing only a shirt

---

[1]Defense counsel bases these notes on what portions of the file he was able to recover, which included police reports, motions in limine, rulings, and clerk's notes. A caveat must be admitted in that complete trial transcripts were not available.

3

and panties, she did not cry out even though her husband was nearby, and he allegedly cut her with a knife making long, parallel cuts on her chest and legs of uniform superficial depth.) This second attack was never charged and was kept out of the trial, although it is unclear at whose request. In sum, the likely reason that two juries were unable to convict even Mr. Von Loh was not merely insufficient proof, but that he was actually innocent.

Mr. Von Loh has pled guilty to the present offense and there are no apparent factual disputes. The charged offense is that Mr. Von Loh traveled across state lines to have sex with a minor on the weekend of November 15. He has also stipulated to similar conduct in August and September as well.

## II. The stipulated conduct and the charged offense must group under the plain text of sentencing guidelines §§3D1.2 (b) & (c).

### A. The applicable guideline

The guidelines issue in this case is whether multiple occasions of sexual conduct occurring as part of a single relationship between an adult and a consenting teenage minor should be grouped under §3D1.2, or should be treated as separate groups triggering application of the multiple count rules. The relevant portions of section 3D1.2 are as follows, with underlining for emphasis applied liberally and clearly irrelevant material omitted as appropriate:

**§3D1.2. Groups of Closely Related Counts**

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:

4

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

Offenses covered by the following guidelines are to be grouped under this subsection:

[§2A2.3 is not listed here]

Specifically excluded from the operation of this subsection are:
all offenses in Chapter Two, Part A; [...]

Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection.

Commentary

*Application Notes:*

*1. Subsections (a) -(d) set forth circumstances in which counts are to be grouped together into a single Group. Counts are to be grouped together into a single Group if any one or more of the subsections provide for such grouping.* [...]

*2. The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (e.g., drug or immigration offenses, where society at large is the victim) , the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. Where one count, for example, involves unlawfully entering the United States and the other involves possession of fraudulent evidence of citizenship, the counts are grouped together because the societal interests harmed (the interests protected by laws governing immigration) are closely related. In contrast, where one count involves the sale of controlled substances and the other involves an immigration law violation, the counts are not grouped together because different societal interests are harmed. Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, i.e., to identify and group "counts involving substantially the same harm."*

5

3. *Under subsection (a) , counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim.*

[...]

*Examples: (1) The defendant is convicted of forging and uttering the same check. The counts are to be grouped together. (2) The defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping. The counts are to be grouped together. (3) The defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive. The counts are to be grouped together. (4) The defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. The counts are to be grouped together. (5) The defendant is convicted of three counts of unlawfully bringing aliens into the United States, all counts arising out of a single incident. The three counts are to be grouped together. But: (6) The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts are not to be grouped together.*

4. *Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm) .*

[...]

*Examples: [...] (2) The defendant is convicted of two counts of mail fraud and one count of wire fraud, each in furtherance of a single fraudulent scheme. The counts are to be grouped together, even if the mailings and telephone call occurred on different days. (3) The defendant is convicted of one count of auto theft and one count of altering the vehicle identification number of the car he stole. The counts are to be grouped together. [...] But: (5) The defendant is convicted of two counts of rape for raping the same person on different days. The counts are not to be grouped together.*

5. *Subsection (c) provides that when conduct that represents a separate count, e.g., bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor. This provision prevents "double counting" of offense behavior. Of course, this rule applies only if the offenses are closely related. It is not, for example, the intent of this rule that (assuming they could be joined together) a bank robbery on one occasion and an assault resulting in bodily injury on*

6

*another occasion be grouped together. The bodily injury (the harm from the assault) would not be a specific offense characteristic to the robbery and would represent a different harm. On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection. Frequently, this provision will overlap subsection (a) , at least with respect to specific offense characteristics. However, a count such as obstruction of justice, which represents a Chapter Three adjustment and involves a different harm or societal interest than the underlying offense, is covered by subsection (c) even though it is not covered by subsection (a).*

*Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.*

*A cross reference to another offense guideline does not constitute "a specific offense characteristic ... or other adjustment" within the meaning of subsection (c). For example, the guideline for bribery of a public official contains a cross reference to the guideline for a conspiracy to commit the offense that the bribe was to facilitate. Nonetheless, if the defendant were convicted of one count of securities fraud and one count of bribing a public official to facilitate the fraud, the two counts would not be grouped together by virtue of the cross reference. If, however, the bribe was given for the purpose of hampering a criminal investigation into the offense, it would constitute obstruction and under §3C1.1 would result in a 2-level enhancement to the offense level for the fraud. Under the latter circumstances, the counts would be grouped together.*

*6. Subsection (d) likely will be used with the greatest frequency. It provides that most property crimes (except robbery, burglary, extortion and the like) , drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together.*

*[...]*

*Background: Ordinarily, the first step in determining the combined offense level in a case involving multiple counts is to identify those counts that are sufficiently related to be placed in the same Group of Closely Related Counts ("Group") . This section specifies four situations in which counts are to be grouped together. Although it appears last for conceptual reasons, subsection (d) probably will be used most frequently.*

*A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be*

7

*grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior. Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped 'together. Counts involving different victims (or societal harms in the case of "victimless" crimes) are grouped together only as provided in subsection (c) or (d).*

*Even if counts involve a single victim, the decision as to whether to group them together may not always be clear cut. For example, how contemporaneous must two assaults on the same victim be in order to warrant grouping together as constituting a single transaction or occurrence? Existing case law may provide some guidance as to what constitutes distinct offenses, but such decisions often turn on the technical language of the statute and cannot be controlling. In interpreting this Part and resolving ambiguities, the court should look to the underlying policy of this Part as stated in the Introductory Commentary.*

(U.S.S.G. §3D1.2, text and commentary, slightly edited as marked, emphasis added.)

Thus, the guidelines explicitly state that if any of the applicable basis for grouping apply, conduct should be grouped. By the omission of §2A2.3 from the list of automatically groupable offenses under §3D1.2(d), the guidelines inform us that the most common basis for grouping will not apply in this case. The question then remains whether any of the other bases for grouping apply.

**B.    The continuing offenses involve the same victim and substantially the same harm, and therefore the conduct should be grouped under §3D1.2(b).**

Mr. Von Loh had an ongoing, consensual sexual relationship with a 14 year old girl. USSG §3D1.2(b) states that counts should group where the counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan. The guideline and its commentary clearly state that the key issue is whether the disparate counts involve substantially the same

8

composite harm.

The probation office points out the commentary to §3D1.2 stating that multiple instances of rape against the same victim should not be grouped together. PSR at 3. Not only is this necessarily true (because guidelines commentary is necessarily correct) but it also makes sense. Each instance of rape is a new and separate harm upon the bodily integrity and psyche of the victim, separated by periods in which the victim is not being violated. A consensual relationship, even with a minor not legally capable of consent, is different. A prolonged period of general consent ties together separate acts in a way that non-consensual acts are not connected. The relationship as a whole is what causes harm to the victim, not merely the component sexual acts.

The nature of the harm caused by Mr. Von Loh's conduct deserves some discussion. There are two parallel but fundamentally related societal constraints on sexual behavior. The first is that no person can have sex with another person who does not consent. Lack of consent turns sex into rape, and rape is rape whether the victim is an adult or a minor. The second constraint is that adults may not have sex with minors. Where teenagers are concerned, this restriction is not because teenagers are incapable of consenting. Indeed, teenagers in our society are consenting left and right. Moreover, there is no legal restriction on teenagers having consensual sex with other teenagers. Rather, our constraints on adults having sex with minors exist to

9

protect our children. These laws and norms have a complicated history,[2] but the laws remain in force because teenagers have insufficient life experiences to navigate potentially hazardous sexual dynamics on the same terms as adults. In other words, we hope that our children will make wise choices, but we especially do not wish them to be taken advantage of by people old enough to know better. Although the historical concept of "statutory rape" blurs the lines between these two prohibitions (non-consent vs. minority), it is clear that the instant case is not a non-consent case. There are situations where the legal presumption of incapacity to consent correlates with an actual incapacity (as with preteen children), but there is no evidence that this is such a case.

If there were any doubt that there is a difference between non-consent and minority cases, the sentencing guidelines themselves recognize that distinction. The background commentary to §2A3.2 makes clear that §2A3.2 applies to consensual sexual relationships with minors down to the age of 12. In contrast, sex with any non-consenting person or a child under 12 is dealt with under the criminal sexual abuse

---

[2]The notion of <u>lack</u> of capacity for teenagers to consent has developed as a legal fiction to explain the unquestionably necessary rules we have. The concept of incapacity makes understanding the law simple. But there is little doubt that many 13 year olds actually understand both the mechanics and direct repercussions of sex, along with possessing sufficient assertiveness to say "no." As an analogy, consider that we allow some 13 year olds to be tried and sentenced as adults, which involves a far less intuitive subject to be understood. The idea that teenagers are incapable of consenting to sex is not based on observation, but simply on the social utility of the convention. It is not that they can't consent; it is that we just don't want them to, for very good reasons.

guideline, §2A3.1.

This does not complete the analysis. The various harms that can occur from adults having sexual relations with children are not limited to pregnancy and sexually transmitted diseases. If they were, then condom use (such as occurred in this case) would be a defense or at least mitigation in a case like this. (The defense absolutely does not make such an argument.) Harms just as serious are the harms that are emotional, psychological and developmental. The victim in this case is undoubtedly dealing with issues that a fourteen year should not have to. She gave her heart and body to a man who lied to her about his age and who could never be a "normal" boyfriend in any way. She has had her first sexual experiences scrutinized by her parents, the police, FBI agents, and courts. Additionally, someone that she thought she loved has been ripped from her and is being sent to jail for at least a decade. She may (or may not) have to deal with psychological issues relating to trust, men, sex and guilt for the rest of her life.

The point of this discussion is that no separable or distinct harm occurred to the victim by virtue of the fact that she had sex with Daniel Von Loh on more than one occasion. The harm that occurred began when she first began talking to him, and continued each time they talked, met, kissed, etc. The harm will continue over the next decade as she gradually realizes how being 20 is different than being 14, and why it is that 44 year old men are not allowed to date 14 years olds. Harm will come to her

11

as she realizes, over the years, that she has been the victim of a crime and will never be quite the same as a result of it. This is a different form of harm than what occurs from non-consensual sex. In a multiple rape scenario (as discussed in the commentary), the victim knows she is being violated as it occurs, achieves some repose, and then is violated again. Without in any way understating the overwhelming seriousness of the present offense, the harm in the present case can be distinguished in that the victim gave no indication that she realized she was being harmed in any way during the entire seven months of their relationship. The multiple rape example from the commentary does not apply to the kind of harm that occurs in consensual relationship cases.

For this reason, §3D1.2(b) applies. There is one primary victim in this case, and one common scheme or plan to have an illegal adult relationship with her over a 7 month period of time. The three distinct sexual episodes (which themselves consisted of multiple acts) are criminally punishable portions of this larger scheme. The harm caused by the distinct episodes is so integrally blended with the harm caused by the whole of the relationship that it is impossible to describe each episode as a separate and distinct harm. Instead, this is one composite harm and should be treated as such. If this Court decided that the ongoing nature of the sexual relationship is in any way not accounted for by the 5 level increase under §4B1.5(B)(1) (see below), the fact that multiple acts occurred could be accounted for by a sentence above the low end of the

12

range, but should not result in extra levels via the multiple count enhancements.

**C.** **Via the operation of §4B1.5(b)(1), Mr. Von Loh's offense level is increase by five levels as a result of pattern of activity involving prohibited sexual conduct. As such, conduct from the stipulated conduct is being used as an"other adjustment" to the count of conviction, and therefore the count of conviction and stipulated conduct should be grouped.**

There is a second applicable reason to group the different episodes in this case.

Subsection (c) of §3D1.2 says that grouping is appropriate when one of the counts

embodies conduct that is treated as a specific offense characteristic in, or other

adjustment to, the guideline applicable to another of the counts. This also applies in this

case.

Mr. Von Loh is being subjected to (and does not oppose) a 5 level increase under

§4B1.5(b) (1). That section provides for an adjustment when the defendant "engaged in a

pattern of activity involving prohibited sexual conduct." By the definitions in the

commentary, prohibited sexual conduct necessarily requires sexual activities with minors.

None of Mr. Von Loh's prior convictions qualifies. Therefore, each of the three separate

episodes of sexual activity in this case (see PSR at 6) in conjunction with each other

constitutes the basis for the 5 level increase that has been awarded in this case. In other

words, each episode and the pattern they create serves as the grounds for 5 level

adjustment to the other episodes. Therefore, by its plain text, §3D1.2(c) requires

grouping of the three episodes in this case.

It should be noted that §4B1.5(b) takes into account a "pattern of activity." To

13

take that same pattern into account twice would be double counting. The ongoing nature
of this relationship is already accounted for by this five level increase and does not
require further punishment.

## III. Summary and Conclusion

This Court faces the difficult task of deciding who Daniel Von Loh is and to what
extent he needs to be incarcerated in order to protect the public. Despite the fact that this
case involved a real fourteen year old girl, there is some mitigation. Both parties agree
that when they first started talking to each other, she told him she was 18. Only after the
relationship was underway did she tell him that she was 13. In other words, Daniel Von
Loh's crime is not that he targeted a child, but that he did not break off the relationship
after he discovered her true age. Additionally, the discovery suggests that, in the midst of
this horrible crime, Mr. Von Loh made continuing attempts to try to be considerate and
supportive. It is not hard to view Mr. Von Loh as somewhat lonely, pathetic, and socially
awkward. He seemed to want the companionship as much as he wanted the sex. This
does not in any way, shape, or form excuse his conduct, but it does separate Mr. Von Loh
from a different kind of adult predator, who lures his prey in to use and abandon them.
After seven months, Mr. Von Loh and the girl still seemed to like each other. As pathetic
and criminal as it is, this was a real relationship.

The word pathetic is apt for his prior conduct as well. It is not understood exactly
why he is the way he is. But there is no sign that he is a preferential pedophile. Mr. Von
Loh seemed to do well on supervision after his last case, and it is hoped he will do so

14

again.

Without the three extra levels that result from not grouping the different episodes, Mr. Von Loh's adjusted offense level is 30. At criminal history category III, that results in a range of 121 to 151 months. For all the reasons discussed herein, the defendant respectfully requests that this Court impose the lightest possible sentence necessary in order to adequately punish Mr. Von Loh for his offense.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: _____
    Daniel J. Hesler

DANIEL J. HESLER
FEDERAL DEFENDER PROGRAM
55 E. Monroe, Suite 2800
Chicago, IL 60603
(312) 621-8347

15